**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PETER ANTHONY SPOTO,     ) Case No. CV 15-1314-JPR
                        )
           Plaintiff,  )
                        ) **MEMORANDUM DECISION AND ORDER**
        v.         ) **AFFIRMING COMMISSIONER**
                        )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social     )
Security,                 )
                        )
          Defendant.  )
                        )

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed April 25, 2016, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

1

## II.  BACKGROUND

Plaintiff was born in 1959.  (Administrative Record ("AR") 127.)  He completed 11th grade and worked as a house painter and handyman.  (AR 36-37.)

On December 11, 2008, Plaintiff filed for SSI, alleging that he had been unable to work since May 1, 2006 (AR 65, 127), because of lower-back and tail-bone problems (AR 66, 135).  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 66, 72, 88.)  A hearing was held on November 2, 2010, at which Plaintiff, who was represented by counsel, testified, as did a vocational and a medical expert.  (AR 32-63.)  In a written decision issued December 9, 2010, the ALJ found Plaintiff not disabled.  (AR 18-25.)

On October 3, 2011, Plaintiff sought review of the Commissioner's decision in this Court.  (AR 316-18.)  On July 10, 2012, a magistrate judge found that the ALJ had erred in relying on the VE's testimony that Plaintiff could perform jobs requiring constant or frequent reaching notwithstanding his residual functional capacity ("RFC")[1] for only occasional work above the shoulder.  (AR 293-300.)  The magistrate judge remanded the case for further proceedings.  (AR 300.)

On September 25, 2012, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's order.  (AR 321.)  On April 23, 2013, a second

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

ALJ held a hearing, at which Plaintiff, who was represented by counsel, testified, as did a second VE. (AR 260-91.) In a written decision issued July 22, 2013, the ALJ found Plaintiff not disabled. (AR 247-54.) On May 5, 2015, the Appeals Council denied review, specifically finding that the ALJ had "properly evaluated the evidence of record and provided good reasons for affording less or no weight to certain medical opinions." (AR 221.) Plaintiff then filed this action, which was assigned to the undersigned magistrate judge because of the unavailability of the first magistrate judge.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support

3

either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments

4

("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 11, 2008, the application date. (AR 249.) At step two, he concluded that Plaintiff had severe impairments of degenerative disc disease with radiculopathy and chronic neck and shoulder pain of undetermined cause. (Id.) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 250.)

At step four, the ALJ found that Plaintiff had the RFC to perform a range of medium work (id.), which is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[2]  § 416.967(c). Plaintiff could stand, walk, or sit for six hours in an eight-hour workday and occasionally stoop, bend, or work above shoulder level.  (AR 250.)  He was precluded from climbing ladders, working at heights, and balancing, and he had no reliable grip strength in his left, nondominant hand.  (Id.)

Finally, based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a house painter but could perform other work in the regional economy. (AR 252-53.)  Accordingly, he found him not disabled.  (AR 254.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ (1) erred in assessing the opinion of Dr. Isaias Paja and (2) failed to articulate legally

---

[2] The ALJ stated that Plaintiff could perform "medium work as defined in 20 CFR 416.967(c)" and was "able to lift or carry up to 25 pounds on occasion and up to 50 pounds frequently."  (AR 250.)  As the Commissioner notes (J. Stip. at 12 n.2.), it appears that this was a scrivener's error given that the correct definition for medium work is "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," § 416.967(c)(2), and given that the ALJ gave significant weight to Drs. Philip Wirganowicz's and Thu N. Do's opinions that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally.  (AR 173, 177, 252.)  In any event, any error in stating that Plaintiff could lift and carry "up to 50 pounds frequently" was harmless because the ALJ ultimately concluded that Plaintiff could perform only certain medium- and light-work jobs.  (AR 253); § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

sufficient reasons for rejecting Plaintiff's subjective symptom testimony.  (J. Stip. at 4, 25.)

   A.   The ALJ's Assessment of the Medical Evidence

   Plaintiff argues that the ALJ "failed to articulate specific and legitimate reasons for rejecting" Dr. Paja's opinions.  (Id. at 9.)  For the reasons discussed below, remand is not warranted on this ground.

   1.   Applicable law

   Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.

   This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 416.927(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 416.927(c)(2)-(6).

7

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id. (citing Lester, 81 F.3d at 830-31).  Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

　　　　　2.　Relevant background

On March 1, 2009, Dr. Philip Wirganowicz, an orthopedic surgeon, performed an orthopedic evaluation of Plaintiff at the agency's request.  (AR 169-73.)  Dr. Wirganowicz reviewed Plaintiff's April 2006 lumbar-spine x-ray, noting that it showed first-degree spondylolisthesis at L5-S1.[3]  (Id.; see also AR 194 (Apr. 2006 x-ray report).)  Plaintiff did not use any assistive devices or take any medications for pain.  (AR 169.)  He had full range of motion of the lumbar spine; normal range of motion of all joints in the upper and lower extremities, including the shoulders; and no limp.  (AR 171-72.)  He had "slight weakness"

_____

[3] Spondylolisthesis is a condition in which one vertebra slips out of place onto the vertebra below it. Spondylolisthesis, Cleveland Clinic, http://my.clevelandclinic. org/health/diseases_conditions/hic_your_back_and_neck/ hic_Spondylolisthesis (last accessed Aug. 4, 2016).  "Grade I" is the lowest degree of spondylolisthesis, indicating a one- to 25- percent slippage.  Id.

in the ankle and toe but otherwise "5/5" strength in all extremities and intact sensation. (AR 172.)  Plaintiff did not have muscular atrophy or asymmetry. (Id.)  Dr. Wirganowicz diagnosed chronic lower-back pain with radiculopathy. (Id.)  He opined that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally; sit, stand, or walk for six hours in a normal workday with appropriate breaks; and use his upper extremities for gross-motor and fine manipulative movements. (AR 173.)

On April 1, 2009, Dr. Thu N. Do, a general practitioner,[4] reviewed the record and completed an RFC assessment. (AR 176-82.)  Dr. Do opined that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally; sit or stand and walk for six hours in a eight-hour workday with normal breaks; and perform unlimited pushing and pulling with his upper and lower extremities. (AR 177.)

On May 2, 2013, Dr. Paja, who specialized in family medicine (AR 427), completed three medical-opinion forms: a "medical source statement of ability to do work-related activities (mental)," an "evaluation form for mental disorders," and an RFC questionnaire. (AR 427-33.)  In the medical-source-statement form, Dr. Paja checked boxes indicating that Plaintiff had "moderate" restriction on his ability to maintain attendance and punctuality; perform at a consistent pace; interact appropriately

---

[4] Dr. Do's signature line included a medical-consultant code of 12, indicating "[f]amily or [g]eneral [p]ractice." (AR 180); see Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/0424501004.

with the public, supervisors, and coworkers; sustain an ordinary routine without special supervision; and respond appropriately to changes in a routine work setting.  (AR 427.)  In the space for listing "[w]hat supports [his] assessment," he cited Plaintiff's "self assessment of work."[5]  (Id.)  Dr. Paja also noted that Plaintiff's memory was decreased "secondary to med[ication]."  (Id.)

In the mental-disorders-evaluation form, Dr. Paja listed Plaintiff's complaints as chronic lower-back, left-shoulder, and neck pain.  (AR 429.)  Dr. Paja wrote that Plaintiff was able to perform activities of daily living but only with his right hand because his left shoulder was weak.  (AR 431.)  He wrote that "when [Plaintiff] takes medication it can impair [his] memory."  (Id.)

In the RFC questionnaire, Dr. Paja opined that Plaintiff could sit for less than 30 minutes at a time for a total of less than two hours in an eight-hour day and walk for about 30 minutes at a time for a total of about four hours in an eight-hour day.  (AR 432.)  He had "no significant limit" on his ability to stand.  (Id.)  He could lift and carry up to 10 pounds occasionally and up to 20 pounds rarely but never more than that, and he could occasionally bend or stoop.  (Id.)  Plaintiff could use his hands for handling frequently and for pushing, pulling, and fine manipulation occasionally.  (Id.)  He could never be exposed to unprotected heights, marked temperature changes, noise, dust, or fumes.  (AR 433.)

---

[5] Some of Dr. Paja's writing in this section is illegible.

Under "objective signs of pain," Dr. Paja cited Plaintiff's April 2011 left-shoulder x-ray findings of moderate to severe degenerative changes to left acromioclavicular joint and his April 2011 lumbar-spine x-ray showing a bilateral pars defect at L5, grade I anterior spondylolisthesis at L5-S1, mild to moderate disc-space narrowing, and small anterior osteophytes. (AR 433; see AR 420-21 (x-rays).) Dr. Paja believed that Plaintiff's pain was "marked" and that he was unable to reach with his left shoulder. (AR 433.) Dr. Paja opined that Plaintiff's lower-back pain limited his range of motion and ambulation and required pain medication with a "sedating effect." (Id.) Finally, Dr. Paja remarked that Plaintiff was "very limited in activities of daily living." (Id.)

### 3.   Analysis

The ALJ accorded "significant weight" to Drs. Wirganowicz's and Do's opinions and "no weight" to Dr. Paja's.[6] (AR 252.) Because Dr. Paja's opinions were contradicted by Drs. Wirganowicz's and Do's, the ALJ had to give only specific and legitimate reasons for rejecting them. See Carmickle, 533 F.3d at 1164. As discussed below, the ALJ did so.

First, the ALJ found that "no evidence" indicated that Dr. Paja had "even personally examined [Plaintiff] or reviewed" the medical evidence of record. (AR 252.) Indeed, Dr. Paja's name

---

[6] The ALJ also accorded "reduced weight" to treating physician Kurt Frauenpreis's opinion because his findings were "not supported by either the consultative examination, the objective tests contained in the record, or by [Plaintiff's] own work history." (AR 252.) Plaintiff has not challenged that portion of the ALJ's decision.

11

1   appeared on only one of Plaintiff's progress notes, which was
2   dated March 7, 2013 (AR 407), less than two months before Dr.
3   Paja rendered his opinions, on May 2, 2013 (see AR 427, 433).
4   Other than basic findings like weight, height, and blood
5   pressure, the progress note — which appears to be in two
6   different handwritings — lists only "disability paperwork" and
7   Plaintiff's subjective complaints.  (AR 407.)  In the section for
8   listing "Systems Examined," someone checked only the box for
9   indicating that Plaintiff's general appearance was normal; he did
10  not check boxes indicating that anyone had examined Plaintiff's
11  back, extremities, "neuro," neck, or any other system, nor did he
12  record any examination findings or prescribe any medication or
13  other treatment.  (Id.)  And nothing indicates that Dr. Paja
14  examined Plaintiff when he completed the opinion forms in May
15  2013; rather, it appears that Plaintiff simply faxed the forms to
16  Dr. Paja's office and that Dr. Paja then filled them out.  (See
17  AR 426 (fax cover sheet).)  Indeed, Dr. Paja left blank the
18  section of the forms for listing "date patient first examined,"
19  "date of most recent examination," and "frequency of visits."
20  (AR 429.)  Nor does anything in the forms or treatment note
21  indicate that Dr. Paja reviewed Plaintiff's medical records other
22  than the April 2011 x-rays.  Thus, it is not clear that Dr. Paja
23  was in fact a treating or even examining doctor.[7]

24

25      [7] Plaintiff's counsel asserts that Plaintiff "testified that
26  he treats with Dr. Paja." (J. Stip. at 7 (citing AR 274).)  That
    is not accurate.  All that Plaintiff said was, "What I did do was
27  go to Dr. Paja," never clarifying how often or for what purpose.
    In light of the evidence discussed above showing that Plaintiff
28  had very little if any interaction with Dr. Paja, this statement

1   The ALJ properly relied on the apparent lack of treatment
2   history and examination findings to discount Dr. Paja's opinion.
3   See § 416.927(c)(2)(i) ("[l]ength of the treatment relationship"
4   and "frequency of examination" are relevant factors in assessing
5   treating-source opinion); Edlund v. Massanari, 253 F.3d 1152,
6   1157 & n.6 (9th Cir. 2001) (as amended) (same); see also
7   § 416.927(c)(6) (extent to which doctor is familiar with record
8   is relevant factor in deciding weight to give opinion).
9       Next, the ALJ found that Dr. Paja's mental-health
10  limitations were "without foundation in the record." (AR 252.)
11  Indeed, Plaintiff's medical records don't reflect any diagnosis
12  of or treatment for any mental-health problems. (See AR 191-206,
13  405-24.) And Dr. Paja cited no medical or clinical findings to
14  support his findings of moderate mental limitations; instead, he
15  noted that they were based on Plaintiff's "self assessment of
16  work." (See AR 427.) Although Dr. Paja asserted that
17  Plaintiff's medication caused memory problems (id.), Plaintiff
18  testified that his medication didn't cause any side effects (AR
19  276). Plaintiff, moreover, now "concedes that the record is more
20  support[ive] of [his alleged] physical impairments" than his
21  mental ones. (J. Stip. at 8.) The inconsistency between the
22  record and Dr. Paja's opinion was a permissible reason to reject
23  it. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)
24  (ALJ may permissibly reject check-off reports that do not contain
25  explanation of basis for conclusions); Connett v. Barnhart, 340
26  F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion
27  _____
28  is at best ambiguous.

properly rejected when treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [plaintiff]"); Batson, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings").[8]

The ALJ also found that Dr. Paja's opinion regarding Plaintiff's physical limitations was "not consistent with [Plaintiff's] current work status." (AR 252.) Indeed, Plaintiff testified at the April 2013 hearing that he had been working part time as a bagger at Vons grocery store for 10 months. (AR 265-66.) Plaintiff took the bus to and from the grocery store and worked four-hour shifts for a total of 16 hours a week. (AR 266, 269.) At work, he would place three or four canned items in bags and boxes, vegetables, and bread items on top and then place the bagged groceries in the customer's cart (AR 267, 278); he sometimes helped customers take bags out to their car (AR 266). Plaintiff testified that the job required "a lot of hustling" in that he would have to "run from one end of the store to the next to find items for someone." (AR 270.) Even despite Plaintiff's testimony that he could take extra breaks at work (id.), supposedly didn't lift anything weighing more than five or 10 pounds (AR 268-69, 277-78), and never packed grocery bags so that they weighed more than eight pounds (AR 278), his ability to

---

[8] In denying Plaintiff's request for review, the Appeals Council specifically noted that the record showed that Plaintiff "received very limited[] personal treatment" from Dr. Paja and that "[t]here is also no indication from the record that [Plaintiff] alleged any mental limitations." (AR 221.)

14

1    perform such an active job appears inconsistent with Dr. Paja's
2    limitations.   Indeed, Dr. Paja found that Plaintiff could lift
3    and carry up to 10 pounds only "occasionally," which is defined
4    as "up to 2 hours," and 11 to 20 pounds only "rarely," which is
5    defined as "30 minutes or less" (AR 432), but Plaintiff
6    apparently lifted groceries and bags of groceries for most of his
7    four-hour shift.   As such, the ALJ did not err in relying on this
8    factor to discount Dr. Paja's opinion.   See Rollins v. Massanari,
9    261 F.3d 853, 856 (9th Cir. 2001) (ALJ's finding that doctor's
10   "restrictions appear to be inconsistent with [plaintiff's] level
11   of activity" was specific and legitimate reason for discounting
12   opinion); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
13   601-02 (9th Cir. 1999) (ALJ permissibly rejected treating
14   physician's opinion when it conflicted with plaintiff's
15   activities); see also Fisher v. Astrue, 429 F. App'x 649, 652
16   (9th Cir. 2011) (conflict between doctor's opinion and claimant's
17   daily activities was specific and legitimate reason to discount
18   opinion).[9]

19        The ALJ was also entitled to rely on Drs. Wirganowicz's and
20   Do's opinions instead of Dr. Paja's.   Dr. Wirganowicz was a
21   board-certified orthopedic surgeon (AR 173), whereas Dr. Paja

22

23        [9] Plaintiff contends that Dr. Paja's opinion was not
     inconsistent with Plaintiff's work status because Dr. Paja stated
24   that Plaintiff could work part time.   (J. Stip. at 9; see also AR
     432.)   It is true that some of Dr. Paja's limitations might be
25   consistent with Plaintiff's description of his job duties.   But
     even if the ALJ somehow erred in relying on Plaintiff's work
26   status to discount Dr. Paja's opinion, it was harmless because
     the ALJ provided other specific and legitimate reasons for his
27   assessment.   See Stout, 454 F.3d at 1055 (nonprejudicial or
     irrelevant mistakes harmless).
28

practiced family medicine (AR 427).  <u>See</u> § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  Dr. Wirganowicz performed a complete orthopedic evaluation of Plaintiff, finding that he had full range of motion in all joints, a normal gait, full motor strength in all joints except his ankle and toe, and intact sensation (AR 171-72).  Because Dr. Wirganowicz personally observed and examined Plaintiff and his findings were consistent with the objective evidence, his opinion constitutes substantial evidence supporting the ALJ's decision.  <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [plaintiff]"); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).  This is particularly true given Dr. Paja's limited relationship with Plaintiff.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.

Dr. Do's opinion also constitutes substantial evidence because he relied on Dr. Wirganowicz's objective medical findings.  (AR 181-82 (listing Dr. Wirganowicz's RFC assessment under "significant objective findings)); <u>see</u> <u>Tonapetyan</u>, 242 F.3d at 1149 (non-examining physician's opinion constituted substantial evidence because it rested on examining physician's objective findings); <u>Thomas</u>, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with

16

independent clinical findings or other evidence in the record.").

Plaintiff argues that the ALJ ignored medical records showing that Plaintiff would eventually need surgery on his left shoulder.[10]  (J. Stip. at 8 (citing AR 417).)  But the ALJ specifically discussed Plaintiff's April 2011 shoulder x-ray, which showed moderate to severe degenerative changes of the left acromioclavicular joint (AR 251 (citing AR 420)), and he expressly stated that Plaintiff's medical records "noted that [Plaintiff] would eventually require surgery on the left shoulder" (AR 251 (citing AR 417)).[11]  Plaintiff also argues that

---

[10] Contrary to Plaintiff's assertion (see J. Stip. at 23), it is not clear that a doctor made this assessment.  Nothing on the progress note stated that the provider was a doctor, and he did not check a box in his signature line for indicating whether he was an "MD," "DO," "PA," or "NP."  (AR 417; compare AR 407 (progress note signed by Dr. Paja with notation "Paja md, Isaias" and "MD" box checked).)  Indeed, several of Plaintiff's progress notes were completed by providers who were not doctors.  (See, e.g., AR 202 (note completed by Calvin Pramann "DC," or doctor of chiropractic), 408 (note completed by Sam Som "NP," or nurse practitioner), 409 (note completed by Joyce Kusuma "NP," or nurse practitioner).)  Neither nurse practitioners nor doctors of chiropracty are acceptable medical sources.  See SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); § 416.913(d).

[11] The ALJ erroneously stated elsewhere in his opinion that Plaintiff's "medical evidence of record" from a particular provider ended on March 15, 2011, and "no more contemporaneous evidence is in the record."  (AR 252.)  The record in fact contains treatment notes from that provider from June, July, and August 2011; January, February, April, June, and November 2012; and January, February, and March 2013.  (AR 407-20.)  Several of those notes concerned Plaintiff's treatment for bronchitis, sore throat, or other complaints not related to his allegedly disabling conditions.  (AR 409, 412-15.)  The ALJ may have been confused by Plaintiff's testimony seeming to indicate that he stopped going to that provider in 2010.  (See AR 274.)  But in any event, the ALJ apparently reviewed the more recent notes, because he specifically noted that one of them, from August 2011,

1  "[t]he ALJ's reliance on Drs. Wirganowicz and Do does not seem to
2  take into account the significance of [Plaintiff's] left arm
3  impairments" (J. Stip. at 19-20), but the ALJ in fact
4  accommodated Plaintiff's left-shoulder condition by stating in
5  his RFC that Plaintiff had "no reliable grip strength in his
6  left, non-dominant hand" and could perform only occasional work
7  above shoulder level.  (AR 250.)  As such, remand is not
8  warranted.

9         B.   The ALJ Properly Assessed Plaintiff's Credibility

10        Plaintiff argues that the ALJ "failed to articulate legally
11 sufficient reasons for rejecting" his testimony.  (J. Stip. at
12 25.)  For the reasons discussed below, remand is not warranted.

13             1.   Applicable law

14        An ALJ's assessment of symptom severity and claimant
15 credibility is entitled to "great weight."  See Weetman v.
16 Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
17 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
18 believe every allegation of disabling pain, or else disability
19 benefits would be available for the asking, a result plainly
20 contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina, 674 F.3d at 1112
21 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

22        In evaluating a claimant's subjective symptom testimony, the

23

24 indicated that Plaintiff needed left-shoulder surgery.  (AR 251
25 ("It was noted that [Plaintiff] would eventually require surgery
   on the left shoulder." (citing AR 417)), 417 (Aug. 2011 note).)
26 Plaintiff does not point to any specific evidence in the other
   notes that the ALJ should have considered but didn't.  Cf. Howard
27 ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)
   ("the ALJ is not required to discuss evidence that is neither
28 significant nor probative").  Thus, any error was harmless.

ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d
at 1035-36.  "First, the ALJ must determine whether the claimant
has presented objective medical evidence of an underlying
impairment [that] could reasonably be expected to produce the
pain or other symptoms alleged."  Id. at 1036.  If such objective
medical evidence exists, the ALJ may not reject a claimant's
testimony "simply because there is no showing that the impairment
can reasonably produce the degree of symptom alleged."  Smolen,
80 F.3d at 1282 (emphasis in original).

     If the claimant meets the first test, the ALJ may discredit
the claimant's subjective symptom testimony only if he makes
specific findings that support the conclusion.  See Berry v.
Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or
affirmative evidence of malingering, the ALJ must provide "clear
and convincing" reasons for rejecting the claimant's testimony.
Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as
amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,
1102 (9th Cir. 2014).  The ALJ may consider, among other factors,
(1) ordinary techniques of credibility evaluation, such as the
claimant's reputation for lying, prior inconsistent statements,
and other testimony by the claimant that appears less than
candid; (2) unexplained or inadequately explained failure to seek
treatment or to follow a prescribed course of treatment; (3) the
claimant's daily activities; (4) the claimant's work record; and
(5) testimony from physicians and third parties.  Rounds v.
Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
amended); Thomas, 278 F.3d at 958-59.  If the ALJ's credibility
finding is supported by substantial evidence in the record, the

1  reviewing court "may not engage in second-guessing."  Id. at 959.

2

3

4          2.  Relevant background

5      In an undated disability report, Plaintiff wrote that
6  "[l]ower back and tail bone problems" limited his ability to work
7  and that he could "not lift anything because the doctor tol[d] me
8  I could be paralized [sic]."  (AR 135.)  Plaintiff wrote in
9  another undated disability report that he had an x-ray to "prove
10 his disability" and that if he lifted the "wrong way" he would be
11 paralyzed from the "waist down."  (AR 152.)

12     In an October 9, 2009 disability report, Plaintiff stated
13 that his "condition ha[d] worsened with the pain moving into the
14 middle and upper back," and he had "severe pain and numbness in
15 [his] arms and neck" and "severe headaches."  (AR 158.)  He was
16 unable to run or jog, could walk only with "great hardship," and
17 was in "constant pain."  (Id.)  He listed his current medication
18 as "Motrin 800mg."  (AR 161.)

19     At the April 2013 supplemental ALJ hearing following remand,
20 Plaintiff testified that he had worked as a part-time bagger at
21 Vons grocery store for the preceding 10 months.  (AR 265-66.)  He
22 worked four-hour shifts and was given the option of taking a
23 break when he was "wanting to sit down."  (AR 269-70.)  Plaintiff
24 testified that in each grocery bag he placed three or four cans
25 and then boxes, vegetables, and bread items, and that he had
26 "gotten in trouble for putting less items into a bag because of
27 the weight, concerning the bag could rip."  (AR 266-67.)
28 Plaintiff lived alone in a motor home and didn't use any shelves

                              20

or cabinets that were above shoulder level.  (AR 271-72.)  He took the bus to and from work.  (AR 274.)

Plaintiff testified that his left arm was "basically" numb and he did not have "a lot of function in [his] left hand," but he could still bag groceries with his right, dominant hand.  (AR 267.)  He could use his left hand to button a shirt, tie a pair of shoes, and put on a belt.  (AR 267-68.)  He could touch the top of his head with his left hand.  (AR 268.)  With his right arm, Plaintiff could "pick up [a] five-pound gallon of milk and then put it away."[12]  (AR 269; see also AR 277 (stating that with his right arm he could "hold a cup," "hold a five, seven, eight-pound back [sic] of something," and lift about "five to ten" pounds for "[n]ot very long").)  Plaintiff testified that he had "gotten in trouble" at work "for using too many bags for smaller items" and didn't pack grocery bags to weigh more than eight pounds because he had trouble picking them up and putting them in the cart.  (AR 278.)  His legs "cramp[ed] out a lot," and the "bone [was] snapping [his] hips out of place."  (AR 273.)

Plaintiff could sit for "[m]aybe about five to ten minutes, 15 at the most."  (AR 275.)  He couldn't stand "too much" because his legs were weak.  (Id.)  Plaintiff didn't have any side effects from his medication.  (AR 276.)

3.  Analysis

The ALJ found that Plaintiff could perform medium work that required no more than occasional stooping, bending, or work above

_____

[12] A gallon of milk actually weighs approximately eight pounds.  Hernandez v. Colvin, No. 1:12-CV-00330-SMS, 2013 WL 4041862, at *9 n.4 (E.D. Cal. Aug. 8, 2013).

21

shoulder level; never required climbing ladders, working at heights, or balancing; and that accommodated Plaintiff's lack of any "reliable grip strength" in his left hand. (AR 250.)  In doing so, the ALJ credited some of Plaintiff's asserted limitations, including his claim that he had difficulty reaching above shoulder level and could not use his left hand.  As discussed below, to the extent the ALJ rejected Plaintiff's complaints (see AR 252 (according "reduced weight" to Plaintiff's subjective complaints)), he provided clear and convincing reasons for doing so.

The ALJ found that the "objective medical evidence of record" was inconsistent with Plaintiff's allegedly disabling functional limitations.  (AR 252.)  Indeed, Plaintiff claimed that he couldn't lift anything with his left arm (AR 267-68) and could lift only five to 10 pounds with his right arm for "not very long" (AR 278), could sit for only five to 15 minutes at a time (AR 275), couldn't stand "too much" (AR 275), and could walk only with "great hardship" (AR 158).  Yet Dr. Wirganowicz found that Plaintiff had full range of motion in all joints, full motor strength in all joints except his ankle and toe, no muscle atrophy or asymmetry, and intact sensation.  (AR 170-72.)  Drs. Wirganowicz and Do both believed that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally; sit for six hours; and stand and walk for six hours.  (AR 173, 177.)  And even Dr. Paja believed that Plaintiff had "no significant limit" on his ability to stand and could lift 10 pounds "occasionally," or for up to two hours, and 20 pounds "rarely," or for up to 30 minutes. (AR 432.)  Moreover, nothing in the medical records supported

Plaintiff's allegations that his doctors believed that if he
lifted "anything" he could be paralyzed (AR 135, 152) or that his
hip bones were out of place (AR 273).  And as the ALJ noted (AR
251), an April 2011 lumbar-spine x-ray showed only "mild
degenerative changes of the lumbar spine" at L1 to L3, "mild-to-
moderate disc-space narrowing" at L5-S1, a bilateral pars defect
at L5, and "grade I anterior spondylolisthesis" at L5-S1 (AR
421).[13]   The ALJ was entitled to consider the lack of objective
medical evidence in assessing Plaintiff's subjective complaints
and his credibility.  See Burch v. Barnhart, 400 F.3d 676, 681
(9th Cir. 2005) ("Although lack of medical evidence cannot form
the sole basis for discounting pain testimony, it is a factor
that the ALJ can consider in his credibility analysis.");
Carmickle, 533 F.3d at 1161 ("Contradiction with the medical
record is a sufficient basis for rejecting the claimant's
subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in
determining credibility, ALJ may consider "whether the alleged
symptoms are consistent with the medical evidence").

Plaintiff contends that the ALJ "failed to articulate what
evidence undermines [Plaintiff's] testimony."  (J. Stip. at 23.)
The ALJ is required to "specifically identify the testimony [from
a claimant] she or he finds not to be credible and . . . explain
what evidence undermines the testimony."   Treichler v. Comm'r of

---

[13] "Degenerative changes in the spine are those that cause
the loss of normal structure and/or function."  Degenerative Back
Conditions, Cleveland Clinic, http://my.clevelandclinic.org/
services/orthopaedics-rheumatology/diseases-conditions/
degenerative-back-conditions (last accessed Aug. 5, 2016).
"Nearly everyone experiences some disc degeneration after age
40."  Id.

Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)
(alterations in original, citing Holohan v. Massanari, 246 F.3d
1195, 1208 (9th Cir. 2001)); see also Brown-Hunter v. Colvin, 806
F.3d 487, 493 (9th Cir. 2015); SSR 96-7p, 1996 WL 374186, at *4
(July 2, 1996) (decision "must be sufficiently specific to make
clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individual's statements and
the reasons for that weight"). Here, the ALJ summarized
Plaintiff's testimony that he had a limited ability to use his
left arm to lift and carry, lift either arm above shoulder level,
and sit or stand for extended periods of time. (AR 251.) He
found that those statements were "not entirely credible" (id.),
summarized the medical evidence (AR 251-52), and found that it
"strongly indicate[d]" that Plaintiff could perform "some work"
despite his limitations (AR 252). The ALJ therefore did not err.
See Treichler, 775 F.3d at 1103 (ALJ's analysis "need not be
extensive" as long as he "provide[s] some reasoning in order for
[the court] to meaningfully determine whether the ALJ's
conclusions were supported by substantial evidence").

The ALJ also discounted Plaintiff's account of his
limitations because his "part time work . . . strongly
indicate[d] that [he] remain[ed] capable of performing some work,
despite his limitations." (AR 252.) Plaintiff claimed that he
was unable to run or jog, could walk only with "great hardship,"
was in "constant pain" (AR 158), and couldn't stand "too much"
because his legs were weak (AR 275). But Plaintiff testified
that he took the bus to and from work (AR 274) and worked four-
hour shifts at a grocery store (AR 269-70), where he bagged

24

groceries, lifted the bags into carts, occasionally helped take the groceries to a customer's car (AR 266-67, 278), and had to "hustl[e]" and "run from one end of the store to the next to find items for someone" (AR 270). The ALJ did not err in discounting Plaintiff's credibility because such activities were inconsistent with his subjective symptom testimony. See Molina, 674 F.3d at 1112 (ALJ may discredit claimant's testimony when "claimant engages in daily activities inconsistent with the alleged symptoms" (citing Lingenfelter, 504 F.3d at 1040)); id. ("Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly discounted plaintiff's credibility when she had "recently worked as a personal caregiver for two years, and has sought out other employment since then"); Foster v. Astrue, No. EDCV 11-1077-OP, 2012 WL 243253, at *10 (C.D. Cal. Jan. 23, 2012) (finding that ALJ properly considered plaintiff's "ability to perform part-time work" when assessing credibility).

Plaintiff argues that the ALJ erred in discounting his credibility based on his ability to work part time because "[a]n individual can work and qualify for benefits." (J. Stip. at 23-24.) But as discussed above, Plaintiff performed what the ALJ described as "ongoing, physical work" (AR 252) that was inconsistent with his asserted functional limitations; as such, the ALJ permissibly discounted Plaintiff's credibility. Plaintiff points to regulations allowing people who are already

receiving benefits to undergo a "trial work period" without having their benefits terminated (J. Stip. at 24 (citing § 404.1592)), but that regulation does not apply to Plaintiff because he was never found to be disabled and awarded benefits. Plaintiff also cites the regulations for determining whether a claimant has performed substantial gainful activity (J. Stip. at 24), but here the ALJ specifically found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since December 11, 2008"[14] (AR 249).

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff only partially credible.  Because those findings were supported by substantial evidence, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959. Plaintiff is not entitled to remand on this ground.

---

[14] Plaintiff, however, apparently did work enough in 2013 and 2014 to meet the substantial-gainful-activity level.  In denying review of the ALJ's July 2013 decision, the Appeals Council noted that "updated earnings records document that [Plaintiff] continued to work at the substantial gainful activity level in 2013 and 2014, which evidence further supports the [ALJ's] decision." (AR 221 (Appeals Council's May 5, 2015 order).)  Because the Council denied review, however, this Court reviews only the ALJ's decision for substantial evidence. (See AR 221 (Appeals Council noting that ALJ's "decision is the final decision of the Commissioner")); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161–62 (9th Cir. 2012) ("[w]hen the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner,' and the district court reviews that decision for substantial evidence, based on the record as a whole" (citations omitted)).

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 8, 2016

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[15] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."